By the Court.

For the decision of this case, it is necessary to enquire :
First, whether, according to the principles of the law of nations, the laws of the place, where a Contract has been entered into, are to govern its effects every where;
And, secondly, whether the special provision of the Spanish statute, which directs, that the customs of the place, where a marriage has been contracted, shall govern the effects of such marriage, is applicable to the present case.
I. With respect to the law of nations, the principle,' recognized by most writers, may be reduced.to this ; that although no power is bound to give effect, within its own territory, to the laws of a foreign country, yet by the courtesy of nations, and from a consideration of the inconveniences, which would be the result of a contrary conduct, foreign laws are permitted to regulate contracts, made in foreign countries. But, in order that they may have such effect, it must* first, be ascertained that the parties really intended to be governed by those laws, and had not some other country in contemplation, at the time of *67 the contract. This being previously recognized, the government, within the bounds of which, such foreign laws claim admission, has next to Consider, , whether the enforcing of these laws will cause no prejudice, to. its rights, or to the rights of its citizens. ‘
Let us take the first exception, and apply it to this case. Did the parties really intend to be governed, by the laws of the Mississippi Territory, and had they not in contemplation, at the time of contracting marriage, their return to this country ? If we were to judge, from their acts alone, there could be no hesitation, in saying that they went to- Natchez, for the only purpose of contracting marriage, and intended to come back, as soon as it could conveniently be done. Their remaining at Natchez, only a few weeks, and that in a tavern, their return to New-Orleans not long after, and the continuation of their, residence there, until the death of the wife, would amount to an irresistible proof that they had this country in contemplation, at the time of contracting their marriage. But, it is alleged that, however, evident their intention, may appear, from these facts, the appellant had -really taken the resolution, to settle at Natchez--Evidence has been furnished of his declarations, to that purpose, both before his departure, and after his arrival in the Mississippi Territory. One of his brothers has sworn, that, previous to his leaving New-Orleans, he told him, and his other *68 brothers, that he intended to stay at Natchez persons have deposed that letters, expressive of the determination of the appellant, to remain there, were by them received from him, shortly after their dates. Without questioning the propriety of the admission of such testimony the Court is satisfied, that it is insufficient, to counterbalance the weight of the facts, which, disclose the real intention of -the parties.
II. But, should their intention still remain a subject of doubt, we have next to consider, whether by permitting the laws of the Mississippi Territory to regulate this case, this government would not injure its own rights, or the rights of its citizens. For, a foreign law having no other force, than that which it derives from the consent of the government, within the bounds of which it claims to be admitted, that government must be supposed to retain the faculty of refusing such admission, whenever the foreign law interferes with its own regulations. A party to this marriage was one of those individuals, over whom our laws watch with particular care, and whom they have subjected to certain incapacities, for their own safety ; she was a minor. Has she, by fleeing to another country, removed those incapacities ? Her mother is a citizen of this State; herself was a girl of thirteen years, who had no other domicil than that of her mother. Did she not remain, *69 notwithstanding her flight to Natchez, under authority of this government ? Did Mot the pro-téction of this government follow her, wherever the went ? If so, this government cannot,, without surrendering its rights, recognize the empire of laws, the effect of which would be, to render that protection inefficacious. But the laws of the Mis. sissippi Territory, as stated by the parties, del Mot only interfere with our rights, but are at war with our regulations. By our laws, a minor, who marries, cannot give any part of his property, without the authorisation' of those, whose consent is necessary, for the validity of the toar-riage. By the laws of the Mississippi Territory, all the personal estate of the wife (that, would embrace, in this case, every thing which she had) is the property of the husband. Again, according to our laws, we cannot give away more, than a certain portion of our property, when we have forced heirs. But what our laws thus forbid, is permitted in the Mississippi Territory. And shall our citizens be deprived of their legitimate rights, by the laws of another government, upon our own soil ? Shall the mother of Alexandrine! Dussuau lose the inheritance of her deceased child, secured to her by our laws, because her daughter married at Natchez ? Shall; our own laws be reduced to silence within our own precincts» by the superior force of other laws ? If such docs-trine were maintainable, it would he unnecessary, *70 for us to legislate. In vain, would wé endeavour to secure the persons and the property of oüf citizens. Nothing would be more easy, than to render-our precautions useless, and -our laws a dead letter. But the municipal law of the Mississippi Territory, which is relied upon by the appellant, is not the law, which would govern this case even there. The law of nations is law at Natchez .as well as at New-Orléans, according to the'principles of that law, “ personal incapacities, commu- “ nicated by the laws of any particular place, “ accompany the person, wherever he goes. “ Thus, he, who is excused the consequences “ of contracts, for want of age, in his country, “ cannot make binding contracts, in another.” Therefore, even if this case were pending, before a tribunal of the Mississippi Territory, it is to be supposed that they would recognize the incapacity, under which Alexandrine Dussuau was la-bouring, when she contracted marriage, and decide, that such marriage could not have the effect of giving to her husband, what she was forbidden to give. If that be sound doctrine, in any case, how much more so must it be'in one of this nature : where the minor, almost a child, -has, in all probability, been, seduced into an escape from her mother’s dwelling, and removed in haste, out of her reach ? We cannot, here, hesitate to believe, that the Courts of our neighbouring Territory, far from lending their assistance to this *71 infraction of our laws, would have enforced with becoming seventy. For, it, when an appeal is made, to those generál principles of natural justice, by which nations have tacitly agreed to govern themselves, in their intercourse with each other, while nations, entirely foreign to one another, feel bound to observe them, how much more sacred must they be, between governments, who though independent of each other, in matters of internal regulation, are associated, for the purposes of common defence, and common advantage, and are members of the same great body politic?
But, it is contended, that, altho’ the law of nations should be found adverse to the pretentions of the appellant, yet, there exists, in the statute of this country, a special disposition imperatively ..declaring, that the custom of the place, where a marriage is contracted, shall regulate the effects of such marriage, wherever the parties may after-wards remove. There it indeed such a provision in the_25th law of the 11th title of the 4th partida; but the Court is of opinion, that it is not applicable to this case. That provision is evidently intended, to have effect only, within the dominions of Spain. Its. objects was to settle the difficul-ties, which could arise in consequence of the diversity of customs, which prevailed in the different provinces of that kingdom. Were it not so, *72 it would be at war with the 15th law of the. 14th title of the 3d partida, which expressly forbids the Spanish tribunals to recognize any authority in the foreign laws cited before them, except as to controversies arising between foreigners, upon Contracts by them made abroad. But, be that as it may, the law relied on is, as are all laws regulating contracts of any kind, intended only for those who can make contracts, and will never be made to .bear upon individuals, who, by the law of dial same country, are rendered incapable of contracting. Besides, it regulates only what concerns the dote, arras and ganancias, that is to say, the dower of the wife, the gift usually made by the husband to the wife, on account of the marriage, and the property acquired during the matrimony. This law, to be applicable at all, must relate to marriages, contracted in places where such customs prevail. As to a donation, or what amounts to a donation, of the wife’s property to the husband,, it has nothing to do with this provision.
If it were required to carry the enquiry any farther, it might also be found that this law is intended for cases, in which the marriage is contracted at the domicil of either, or both* of the parties; and the domicil is afterwards removed to some other place. Bub superabundant reasons having already been adduced for the rejection of